MATILDA BREWSTER, AS ADMINISTRATRIX OF THE ES-
TATE OF JOHN BREWSTER, JR., DECEASED *v.* JAMES DE
FREMERY AND ALBERT MILLER.

OBLIGATIONS OF LESSORS.—A lessor is in no case under obligation to make repairs, unless by force of an express covenant or contract to do so.

IDEM.—Where D. and M. were the owners of a brick building and the lot on which it stood, and B. (deceased) was in occupation as their tenant, on a monthly letting, without covenants by D. and M. to uphold or keep the premises in repair or in habitable condition, and while such occupation continued, B. (deceased) was crushed to death by the falling walls of said building, caused by the acts of the owners of the adjoining lot, whereby the foundations of said walls were undermined, and of which, D. and M., having timely notice, did not adopt or attempt any preventive measures; *held*, that a complaint, setting up this state of facts, in an action under the statute, by B., (administratrix,) against D. and M., for the benefit of the next of kin of the deceased, does not state facts sufficient to constitute a cause of action.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Crockett, Whiting & Naphtaly*, for Appellant.

Aside from any obligations resulting from the relation of landlord and tenant, we maintain that in the absence of covenants to repair, the defendants, as *owners* of the premises, were bound to keep them in a *safe* condition, and to prevent them from becoming a public nuisance. (Bac. Ab., Tit. Nuisance, A; *Meeker* v. *Rensselaer*, 15 Wend. 397; *Surocco* v. *Geary*, 3 Cal. 69; *Myers* v. *Malcolm*, 6 Hill, 292.) It is

conceded that in the absence of covenants to repair, either by the landlord or tenant, the landlord, as between himself and the tenant, is not bound, *simply by virtue of the relation of landlord and tenant*, to repair. The tenant takes the building, subject only to his right to abandon it, and stop the rent, if it becomes unfit for use. That the tenant is bound to make what the law terms " ordinary repairs," to prevent dilapidation, but no others. But it is equally well settled, that the tenant is not bound to make what are termed " substantial repairs." The law is, therefore, perfectly consistent. " Ordinary repairs " must be made by the tenant, and " substantial repairs " by the landlord. If either fails in his duty he is responsible for the damages caused thereby. Neither the landlord nor tenant is liable for damages caused by the neglect of the other to make repairs which by law it was his duty to make. (Taylor's Landlord and Tenant, Sec. 343 ; 1 Woodfall's Landlord and Tenant; 4 Kent Com. 110 and notes ; 1 Moody & R. 173, 112 ; 6 Scott, 277 ; 3 Bingham, N. C., 4 ; 1 Watts & Searg. 532 ; 2 Carr. & K. 186.) We think it is obvious that the landlord, in this case, would have been liable if the damage had happened to a third person and not the tenant.

We propose next to consider whether or not the liability of the landlord, *being the owner of the premises*, is varied or excused, because the party injured was the tenant from month to month, without covenants to repair. If it was not the duty of the tenant to protect the walls of this building— as it clearly was not—and if it was the duty of the *owner* of the building to keep the walls in a safe condition, to prevent them from becoming a public nuisance, it is difficult to see on what principle of reason or justice it could be maintained that the *owner as such* would be liable to a stranger and not to his tenant for the damage caused by his neglect. We place his liability, not on any obligation arising out of the relation of landlord and tenant, but on the general duty of the *owner* of the building as such, to prevent it from becoming a public nuisance. It appears to be a legal solecism to

say, that whilst the owner is liable to everybody else for the damage caused by his neglect, he is not liable to his tenant, simply because he was his tenant. The authority mainly relied upon by the defendants, on the argument in the District Court, was the case of *Howard* v. *Doolittle*, 3 Duer, 464, and it was this case mainly which influenced the Court to sustain the demurrer. But in that case there was but one point made and decided, to wit, that the immediate landlord, being himself only a lessee and not the owner, was not bound to repair, in the absence of covenants. This does not even tend to establish the proposition that the owner, as such, would not have been liable for damages to his tenants, caused by allowing the building to become a nuisance. In this case, there being no covenant to repair, it was plain that the tenant was not bound to protect the walls; and though the defendants were under no covenants to repair, and therefore are not liable by virtue of the *lease*, they were nevertheless bound as *owners* of the property, independently of the lease, to prevent it from becoming a public nuisance, and are liable to all persons, including their tenant, for the damages caused by their neglect in that behalf. In support of these views we refer to *Eakin* v. *Brown*, 1 E. D. Smith, 36; *Wendell* v. *The Mayor*, etc., 39 Barb. 329. The general proposition is, that where either municipal corporations or *individuals* are charged with a duty, as, for example, the keeping in repair of streets and highways, they are responsible for all damages arising from their neglect. (See *West* v. *Trustee*, etc., 16 N. Y. 161; *Payne* v. *Rogers*, 2 H. Black. 349; *Leslie* v. *Pounds*, 4 Taunt. 649.)

*Campbell, Fox & Campbell*, for Respondents, argued:

That a landlord is never bound as between himself and his tenant, in the absence of express agreement, to make either ordinary or substantial repairs, and that there could be no laches or neglect of duty on their part, where no duty existed. So far has this principle been carried, that where

the house has been burned, and the landlord has received the insurance money, he is not bound to. repair. (Woodfall, 412; *Belfour* v. *Weston*, 1 T. R. 312; *Leeds* v. *Chatham*, 1 Sim. 151; *Rodgers* v. *Walker*, 1 Dan. 233.) And even a covenant for quiet enjoyment will not make the landlord liable. (*Brown* v. *Quitton*, 1 Amb. 619.). This principle is as strongly maintained by the American authorities. (Taylor L. & T., Secs. 327, 329.)

The question at this point is, not whether the tenant is bound to repair, but whether the landlord is bound to make any kind of repairs on a house leased and occupied by the lessee, in the absence of express covenant on the part of the landlord. (*Hart* v. *Windsor*, 12 Mees. & W. 68; *Sutton* v. *Temple*, Ib. 52; Arch. L. & T. 67; *Howard* v. *Doolittle*, 3 Duer, 464; *Clevis* v. *Willoughby*, 7 Hill, 86; *Mumford* v. *Brown*, 6 Cow. 475; Comyn, L. & T. 185; Chitt. on Cont. 338; *Westlake* v. *Delgrain*, 25 Wend. 669; *Payne* v. *Rogers*, 2 H. Black. 350; *Corey* v. *Mann*, 14 How. P. R. 163.)

The tenant was bound to repair by shoring up. The owners neither contracted to repair, leased the building with the nuisance existing, nor did any act by themselves or workmen contributing to the fall; no duty arose on their part, nor breach of duty; and cited *Penard* v. *Collins*, 23 Barb. 445; *Fish* v. *Dodge*, 4 Denio, 312; *Waggoner* v. *Jermaine*, 3 Denio, 306; *Chamble* v. *Robinson*, 4 Exch. R. 169; *Rymer* v. *Watts*, 1 Salk. 357; *Bayle* v. *Tamblyne*, 6 Bar. & Cr. 337.)

By the Court, SAWYER, J. :

The defendants were the owners in fee of a brick house, and the lot on which it stood, in San Francisco, called the "Sumner Street House." The deceased was in the occupation of said "Sumner Street House," as the tenant of defendants on a letting from month to month, at a monthly rent payable monthly in advance. No covenants are

averred, on the part of the defendants, to keep the premises in repair, or in a habitable condition, and, for the purposes of the decision, it must be assumed that there were none. While the deceased was thus in the occupancy of the premises, the owners of the adjoining lot excavated it, for the purpose of erecting a building thereon, on a line parallel with the easterly wall of said building, at a distance of three feet ten inches from said wall, to a depth of five feet below the same. The defendants had timely notice of said excavation, and that, in consequence thereof, there was imminent danger that the wall of said "Sumner Street House" would fall, unless proper means should be taken to prevent it. No means were taken by defendants to sustain said wall, or prevent its falling; and on the night of the 17th of August, 1866, said wall and the whole building fell in, and crushed the deceased, who was then occupying said building, as a tenant as aforesaid, by reason whereof he died. The action is brought under the statute of 1862, against the owners of the building, by the administratrix, for the benefit of the next of kin of the deceased.

A demurrer to the complaint alleging the foregoing facts was sustained, and judgment entered for defendants, from which plaintiff appeals.

The house did not fall in consequence of any act of the owners, but in consequence of the acts of parties owning the adjoining lot, in excavating it for purposes of their own, after the deceased entered into the possession of the demised premises under the lease. There was no covenant on the part of the lessors, the defendants, to uphold, or keep the premises in repair, or in a habitable condition. Without an express covenant to that effect, they were not bound to repair, or to keep the premises in a habitable condition. We think the rule correctly stated in *Howard* v. *Doolittle*, 3 Duer, 464. In that case it was held, that a landlord is in no case bound to repair, unless by force of an express covenant or contract, and that, even when a building is let for a special

purpose, and its use and occupation for any other, is, in terms, prohibited, there is no implied contract or warranty on the part of the landlord, that the building shall be, or continue, fit for the purpose for which it is demised. But in that case the question arose between the lessors, who were themselves tenants, and their sub-tenants, and not between the owners of the fee and their tenants; and it is claimed that the case is, therefore, different, and inapplicable. We are unable to perceive any difference in principle. Howard was the owner, as to Doolittle and Burroughs. The former leased to the latter, and if he was liable at all, it was because of the relation of landlord and tenant, and of an implied covenant on his part that the premises during the term should continue in a condition suitable for the purposes for which they were demised. In *Corey* v. *Mann*, 14 How. Pr. R. 163, the question was between strangers and the owner of the fee, and the owner was held not liable, on the ground that the premises were in the occupation of tenants at the time when the injury occurred, and as there did not appear to be any covenant, on the part of the owner, to repair, that duty was presumptively on the tenants. The case of *Howard* v. *Doolittle* was approved. If this is not enough, *Sherwood* v. *Seaman*, 2 Bosworth, 130, is precisely in point, or rather it is a much stronger case for holding the owner liable than the present, for it is averred in that case that the defendant—the owner—neglected and refused to grant a license to enter under the statute of New York (Laws of 1855, p. 11) to the party excavating the adjoining lot, in order to compel him, at his own expense, to preserve and support the wall of the building by proper foundation. The action was by a tenant against his landlord—the owner of the fee—to recover damages resulting from the destruction of his property by the falling of the building in consequence of excavations on the adjoining lot. The only difference, not already mentioned, between that action and this, is, that there the action was for destruction of property, and here damages are claimed for the death of the occupant,

as well as for a destruction of property. The owner was held not liable, and *Howard* v. *Doolittle* was approved. Both these cases were well considered on appeal to the general term, and the leading cases on the subject cited and reviewed; and, although the decisions were not pronounced by the Court of last resort, it does not appear that appeals were further prosecuted. It must be presumed, therefore, that the counsel of the defeated parties were satisfied with the conclusions attained. These cases were cited with approbation upon substantially the same point in *Branger* v. *Manciet*, 30 Cal. 626, and we are satisfied of their correctness. In *Keates* v. *Cadogan*, 2 E. L. & E. 320, in a similar action by a tenant against the owner for damages resulting from the falling of the building upon the occupant from the ruinous condition of the walls, the plaintiff sought to make out a cause of action by averring knowledge of defects on the part of the owner, which he did not communicate to the tenant at the time of the letting, of which defects the tenant was ignorant. The declaration was held insufficient on demurrer. The Court say there was " no obligation on the defendant to say anything about the state of the house and no allegation of deceit. It is an ordinary case of letting." (322.) It was not even claimed by counsel that there was any liability on any other ground than that the defective and dangerous condition of the walls was knowingly concealed from the tenant at the time of letting.

Aside from the relation of landlord and tenant there is no ground, under the circumstances alleged, for holding defendants responsible. The injuries resulted from the occupancy of the premises by the deceased as a tenant. The landlord was under no obligation to uphold or repair, and there was no breach of duty on his part. The cases cited in relation to nuisances have no application.

Judgment affirmed.